We have a nice full afternoon of four arguments, and we're going to start with United States versus Lyons, appellate number 24-2740. May it please the court, Stacey Fossil on behalf of appellant Erin Lyons. With the court's permission, I would like to reserve three minutes for rebuttal. I'm granted. Thank you. This case presents exactly the circumstance the Rehave Court contemplated where someone could lack the knowledge required under the felon in possession statute. Mr. Lyons' predicate offense was a state misdemeanor, not a felony, and he was sentenced to probation, not prison. The district court erroneously dismissed Mr. Lyons' 2255 motion, and reversal is required for two alternate reasons. First, Mr. Lyons has established cause under Reed versus Ross, which excuses procedural default in these circumstances. Second, Mr. Lyons has cleared the low bar for an evidentiary hearing, because there is a dispute regarding whether Mr. Lyons knew his status at the time he possessed the firearm. Make sure that we're clear, though, and sort of some of the basic facts. While the label was a misdemeanor of the first degree under Pennsylvania law, he did face a five-year maximum statutory penalty, and that's a felony equivalent under 922G1, am I correct? Correct, Your Honor. And he was told that during the plea proceeding, correct? Correct, Your Honor. So we are in a felon in possession case, right? Yes, Your Honor. You were saying that Reed somehow should govern, but what about Bosley and its view in a very similar circumstance where it was dealing with use under 924C, and the fact that many courts had taken a position different than Mr. Bosley, but the Supreme Court said that was not enough? Your Honor, I think we have to read Bosley so that it does not overrule Reed. And if Bosley were to be read that simply raising an argument that other litigants were raising an argument would foreclose cause, then that would foreclose all three of Reed's categories. Because even where the Supreme Court has overruled its own precedent, there could be and will be cases that are raising that issue. So I submit that the way that the Ninth Circuit read those cases in Worley, and the way that other cases have, for example, this court in Roberson, is the way to read Bosley consistent with Reed. But isn't DeCastro conflict with Worley? I don't think so, Your Honor. I think DeCastro has to be limited to the quorum nobis context, which the court said is the stricter context, in order to make sure that it doesn't create a direct conflict with that Reed second category. Let's talk about DeCastro for a second. Do you agree that in the course of our colleagues' discussion in DeCastro, there was discussion of quorum nobis and was construing quorum nobis using cause and prejudice under habeas law, correct? Yes, I agree, Your Honor. And with that in mind, aren't we as a three-judge panel bound by the DeCastro observations? I don't think so, Your Honor, for two reasons. One, because it was that quorum nobis context that is stricter than habeas. And there is direct precedent on point from the Supreme Court in the habeas context, applying cause and prejudice. And this court has also said, in cases like Tan, that where there is a direct conflict with Supreme Court precedent, this court doesn't need to follow the panel decision. But I'm not arguing that the court needs to overrule or not follow DeCastro, simply that it must be confined to the quorum nobis context, or else it will create a direct conflict with governing Supreme Court precedent that's in the habeas. Which case is it in direct conflict with? With Reed, Your Honor. With Reed. And I would also argue that it is in conflict with this court's earlier decision in Roberson, which read Reed and Boozley together to show that what matters is the difference between a long-settled, unanimous precedent of the lower courts, where cause is established, versus an open question where it may be foreclosed in this particular court, but other circuits have reached a different conclusion. This isn't where we would expect litigants are still raising the issue. There's a conflict that may eventually go to the Supreme Court. What do we do with Greer, though, which was a rehafe issue, albeit on direct appeal, and an evaluation of plain error under Rule 52? It made observations that said this argument was available to be made. There was an opportunity to make it. The consequence in that fact pattern, because of where it was procedurally, was plain error review. Yes, Your Honor. And so I think that available to be made cannot be the rule under Reed. That is the rule under Greer and under Rule 52. If there's an opportunity to raise the argument, there is no futility exception. It is simply reviewed for plain error on direct appeal. And that makes sense in the direct appeal context. But in the habeas context, where we have Reed, we have this cause hurdle that is stricter in the habeas context. It's just that this is the rare, extraordinary circumstance where we can show it because we meet that rehafe category. Ms. Fussell, I find it odd that this discussion in the briefs is divorced from the big change that happened in retroactivity doctrine here. Reed is a pre-Teague case. This sounds like the old Linkletter versus Walker framework. But post-Teague, the way that Teague and Griffith fit together, we treat it as if either this was the law or it wasn't. And we don't ask, well, did you know or could you have raised or is there a good cause for not raising? This looks like we're on collateral review. It's not, you know, it's the end of the story. So why should we be going back to Reed when the more recent telltales like Bosley are all in the other direction? I think, Your Honor, because retroactivity is a separate question. And I acknowledge that Reed, I think, has less force once we limited retroactivity under Teague. But still, once a decision is made retroactive, as this court held in Hill that rehafe is, then you still are governed by those usual cause and prejudice standards. And there is a, you know, we are barred, procedurally barred, as we conceded here, because it was not raised on directive review and have to satisfy cause and prejudice. And Reed still governs that cause and prejudice standard. And I think courts have continued to recognize that it has force after Teague and after Bosley, as this court recognized in Roberson, that Bosley, again, is the difference between an open question that is being raised versus a long, settled, unanimous one. You know, it's interesting to me that Reed uses the word decisions when it begins to think about futility and primarily novelty. But Bosley uses the word challenges. And so it strikes me that we don't have a lot of guidance in Reed on how to apply that second category. It just says this one exists. And then they move on to the third category. And so between that choice of saying, well, they use the second category that says decisions, where we've got Bosley, that actually seems to actually apply this. And it uses the word challenges. Why isn't Bosley just the better choice? I think, Your Honor, because that would be reading Bosley to overrule Reed. And if the court was doing that, I think it would have said so. Is it really over? I mean, is Reed category two anything other than dicta? It says there's three types of novelty, one, two, and three. And we're going to look at the third one. They don't tell us anything about number two. And then Bosley says, hey, you know what? This is what novelty means. And they seem to be taking up the space that might have previously been dicta in terms of a decision. And they say, we'd rather couch that in terms of a challenge. And so I don't know that you're overruling anything, because it's hard to say that giving an example of novelty is now a holding. All that we know in Reed was the holding is the third one, because that's the one they went with, and that's the one they applied. What do you say to that? I think, Your Honor, that Bosley announced the rule for novelty, as you said, and then went on to describe those three categories. I'm sorry. Reed, after announcing those three categories, said that the third one was actually the hardest to show cause, and then went on to apply it there. Those other two categories that it listed first, the one that covers here, the court said, certainly there would be cause. And it's interesting to note that that third category, which is where the Supreme Court had arguably sanctioned the practice, there actually were two cases, a circuit case and a state case, a recent one, that seemed to endorse the claim that ultimately prevailed, and that the court said there was cause in Reed. So I think it's hard to say that that would be dicta, that this court would not be bound by. If I'm hearing you correctly, we've got a choice. Our choice is to either say that we're going to ignore the phrase, challenge is used in Bosley, and say that it can't be amending Reed, or we can say, or overturning Reed, or we can say that Reed, when it articulated factor two and said decisions but didn't apply it, was then modified and explained through Bosley. But neither one of those is a great choice. That's why we're here on OA. But I think the flip side is, it's really hard, on the other hand, to ignore Bosley with its use of challenge, right? I think, Your Honor, I take the point that that language is not ideal. But I do think that because it would prove far too much and essentially mean that all three of the Reed categories are overruled, because any of those will have challenges existing in other courts. And the Reed court said that that is not the inquiry. It's not whether it's available. It's not whether there were other individuals challenging it, but whether they were having some success. And that, of course, is what this court also said in Roberson. I'll reserve the remainder of my time for a moment. OK. May it please the court. Jonathan Bruno for the United States. A 2255 motion is not a do-over for a direct appeal. Mr. Lyons took a direct appeal here. With a few days away from his departure from federal prison, he made the choice to withdraw that direct appeal. Now he says the reason he could not have raised his knowledge of status argument is not that he withdrew his appeal, but that he could not possibly have done so. And that contention runs headlong into both the empirical reality about what was happening with knowledge of status arguments at the time, and into binding precedent. So just briefly on the reality, the scienter issue, as the partial dissent in Nassir summarized the state of play, Nassir won, the scienter issue was hardly a secret. It was continuing to percolate in the lower courts. And it had been litigated across many circuits over many years. It was well known all of the legal tools needed to construct that argument were in place at least by 1988, when Congress added this phrase, knowingly violates the 924-A. Yeah, but there wasn't a prevailing party until Mr. Rahif, right? That's true. Well, there was a prevailing party in a district court, actually, in the Eastern District. So 10 years before Mr. Lyons' direct appeal, a federal defender here successfully raised that argument in a case called Kitsch, K-I-T-S-C-H. That's cited in the Nassir dissent. But that's correct. No circuit court had endorsed the argument. The question, however, is whether the argument was reasonably available, whether it could have been constructed, or on the contrary, as the Supreme Court said in Murray, whether there was some external impediment that prevented counsel from constructing the claim. There was no such impediment here. It had been raised, again, by many defense counsel, FPDs, and private counsel for many years. Multiple circuits were considering the argument at the very time that Mr. Lyons' direct appeal was pending. Not only Mr. Rahaf, but at least two other cases, a case in the Fourth Circuit and a case in the Eleventh Circuit, this argument was squarely raised in opening briefs by defendants. So the argument was well known. It was available. And to say that he could not have raised it in mid-2018 during his direct appeal simply does not comport with that reality. As far as binding precedent, a couple things I'd like to highlight. First is that we already know a little bit about what the current Supreme Court would think of this question, because the Eighth Circuit in Jones v. Hendricks said that the petitioner there could have raised his argument back in his direct appeal in 2001. The Supreme Court affirmed the Eighth Circuit. The majority didn't address that specific question. However, my friend's contention did make an appearance in the US reports. It made an appearance in Justice Jackson's dissent, which no other justice joined. The dissent argued that this knowledge of status argument that later prevailed in Rahaf could have been, I'm sorry, was not meaningfully available at the time of that petitioner's direct appeal. We know ourselves out of a sole dissent. How do you deal with the language in Reed that talks about claims that would be against longstanding widespread practices about which the Supreme Court had not yet spoken? Right. How do you deal with that language? And is it still operative, or has it been passed into doubt because of the cases my colleagues and I have been talking about? What I would say is that it's been substantially narrowed. I don't think it's been overruled, per se. But what the Supreme Court said there is that we hold that where a constitutional claim is so novel that its legal basis was not reasonably available to counsel, that in that circumstance, the defendant has shown cause. But this was a statutory claim. Here we have a statutory claim, not a constitutional claim. And so Reed really is addressing a circumstance in which a constitutional principle that's articulated at 10,000 feet, if you will, due process of law, the Supreme Court holds that that principle invalidates a practice that had been widespread for over a century in many states, which was to allocate to defendants in certain circumstances the burden to prove certain affirmative defenses. And so in that situation, the court holds we're not going to require that counsel anticipated that argument that was not reasonably available. We know that the statutory claim in Raheif was what does the element, what does the statute require the government to prove? As I understand some of the claims that are sometimes brought in this posture, these 2255s, because it has to be a constitutional matter, that they're saying I had to do my conviction violates due process. Because I wasn't on notice, no one was on notice of what the government had to prove. And there's no record evidence that it was proven. So couldn't this be squished into that constitutional claim bucket in Reed? Well, fair enough. I take the point. I think it's a bit different. Here we have a constitutional claim, which is that I was not informed of the true nature of my charge. But that claim has embedded within it a statutory claim. And it depends for its success on a certain type of statutory claim. And so that's quite different than what the court dealt with in Reed. So Reed, I think, is circa 1984, Boozley's late 90s, I want to say. Let's just say this case came to us in that interim period. Wouldn't we just follow Reed? Wouldn't we just say, oh, category two, this is so easy? Or would there be a reason for us to pioneer and say, you know what, this principle is so obvious that the Supreme Court's going to later articulate it differently in Boozley? Wouldn't we just say, yeah, look, we have an overturning of a longstanding and widespread practice to which the Supreme Court has not spoken, but which a near unanimous body of lower court authority has expressly approved? That's pretty specific. That feels like if we're in 1995 and we get this, we say, oh, that's Reed, number two. Novel. Isn't that what we do? No. And so I would point the court to, for example, Smith v. Murray, two years after Reed. Smith v. Murray, the Supreme Court considers whether Reed applies. And it holds that, well, it does two things. First of all, it says that it's an established rule that futility alone cannot constitute cause. And it cites Engleby Isaac, a pre-Reed case, for that proposition. Again, this is just two years after Reed. The court then says that the claim in that case, because it had been percolating in the lower course for many years, did not qualify as a Reed-type case, and that the petitioner there could not show cause for his procedural default. And so Reed was kind of dead two years after. It's not Boozley that kills Reed? It's Smith v. Murray that kills Reed? Boozley is entirely in line with Smith v. Murray. No, no, I know. That's why I'm saying, who killed Reed? And you say Smith now. I would say cabin Freed, strictly cabin Freed, within, again, just a couple of years of that decision. And so it really does speak to a narrow circumstance in which the legal tools needed to construct the argument were not available, or at least were not apparent. The due process clause, of course, was there, but nothing to indicate that that little phrase, due process of law, meant that this widespread practice was unconstitutional. But you say cabined. I said killed. Killed's probably not the right word, you'll say. But your friend on the other side says, this isn't just a Reed Category 2 case. If we buy into what you're saying, then there's really no shot that any of Reed survives. Every one of those categories, as long as the ability to challenge, you could sit there and say, the Supreme Court has repeatedly stuck this position again and again, almost like a Johnson Vagueness sort of thing. It's like, it's not vague, it's not vague, it's vague. And so the answer is, nothing's left of Reed. The more that we, if we buy into Boozley and go a challenge-centric view, she says it kills all of Reed. I don't think that's right. So let me offer a couple examples and see what you think. So, you know, the first example would be essentially a Reed-type situation. So suppose the Supreme Court were to say that the First Amendment, or perhaps the Public Trial Clause of the Sixth Amendment, meant that all criminal proceedings had to be live-streamed. And that the widespread practice across many states of not televising criminal proceedings violated those provisions of the Constitution. That would be a genuinely novel constitutional holding that displaced a longstanding and near-unanimous practice across many states. I submit that would be a Reed-type situation. So you're basically limiting Reed to its facts and then saying Reed through the lens of Boozley. Boozley's challenge-based as I see it. And so when you have a novel challenge coupled with a novel decision, then you've got, that seems to be the model you're positing. Novel challenge coupled with novel decision, but you can't just get a novel decision. It has to be a novel challenge. And that seems that Boozley's doing all the work. Boozley's doing a lot of work. All the work, maybe? The other example I would offer is, it comes from the Roberson case that my friend cites. And I think, you know, it's helpful to look at Roberson. I think it supports the United States here. Roberson involved a circumstance in which the operative text of, in that case, the guidelines that were mandatory at the time, did not exist until November 1st, 1993. And what this court said is that in that circumstance, the legal tools needed to construct the argument that essentially that cocaine base meant only crack. Before that amendment of the guidelines, there was no basis in the text for that view. Because of course, the phrase cocaine base itself does not mean only crack. As a factual matter and chemical matter, there are other compounds that qualify as cocaine base. Then the Sentencing Commission issued, pardon me, this definition that says, cocaine base means crack. And in that circumstance, there's been, we can say an intervening change in the operative text. Here, we don't have that. But if we could just go back to Roberson for a second. So you think Roberson is undisturbed by any of the precedent by the Supreme Court that followed, such as Greer? Yes, I think that's right. Because Roberson, again, deals with that very specific circumstance where the operative text has changed. And the court says there, we don't require counsel to anticipate changes in the law, by which I think it is meant a change in the operative text. But the text of the opinion talks about what's in the federal reporters about the issue, kind of hearkening back to that same language that was in Reed about sort of, is there some law out there that speaks to this matter? I agree that that statement is there in the opinion, but I think it has to be read in context of what comes earlier, which is saying, until November 1st, 1993, the legal basis for this claim was not there. I'd also point to the Jenkins case we cite on page 24 of our brief. That was a case, Judge Alito, then Judge Alito was also on that panel. That was a post-apprendee challenge in which the move-in argued that the jury should have decided his drug quantity. And the court there put that case into the Boosley category, not the Reed category, and cited cases from sister circuits that explained that every circuit, that was a truly unanimous court of appeals authority that said drug quantity is not an element that the jury has to decide. And even in that circumstance, this court in Jenkins said, that's a Boosley situation. You could have raised the argument, it was available, it was well-known. Just briefly, I see I'm running low on time here, briefly to address the evidentiary hearing standard. Before you go to that, I just want to ask your opinion on Greer. Certainly. Does Greer disturb anything in Reed? I don't believe so, because Reed, properly understood, is cabined in this narrow way that I've tried to describe here. Constitutional claim? Correct, correct. Thank you. Okay, you want to talk to us about? Just very briefly on the evidentiary hearing. We agree that it's a low bar, of course, but as this court said in Arrington, the move-in or petitioner must at least allege facts that are not frivolous and clearly contradicted by the record that, if assumed to be true, would show a plausible entitlement to relief. And that did not happen here. What's missing from this case is a statement in the 2255 motion, or the supporting briefing, saying, in fact, I did forget. I did forget that my state offense, in those less than a year and a half between my state court plea colloquy and when I possessed the gun in this case, I forgot that my state offense was punishable by up to five years in prison. Mr. Lyons never said that, and so he did not allege facts that would show a plausible entitlement to relief. I see that my time's remaining, so we'd ask that. Let me see if my colleagues did leave us. Okay, thank you, counsel, you're on. Thank you.  Quickly on cause, and then I'll say a couple words on actual innocence if I can. I just want to point out that Boozley acknowledged that Reed applies in the statutory context. So this idea that it is limited to the constitutional context is wrong. Boozley reaffirmed Reed's rule in the statutory context, but then distinguished it and said it didn't apply there. And I submit that we're the only ones offering a way to harmonize Boozley and Reed. The government is saying that Boozley overruled Reed, and that doesn't make any sense on the face of Boozley. You're saying that it's a way to harmonize it, but it's a way for you to, it's asking us to ignore Boozley. No, Your Honor, my argument is that Boozley applies, Boozley says that there is no cause when the argument is simply unavailable because the particular court has ruled against it. So for example, I can come to this court and say, the Third Circuit has ruled against this claim, it was futile, I couldn't have raised it. I think Boozley says if there were other circuits out there, this was still the type of open issue that we expect people to keep raising, see if it goes to the court. That's the distinction between a question that's just foreclosed in a particular court versus longstanding widespread foreclosure. And again, there are 7,000 plus 922 G1s every year, you know, the handful of folks that were still raising these challenges is sort of based on those idiosyncrasies of those cases or counsel, not sort of the practice that we expect, that that is what we would say is not meaningfully available under Reed. On actual innocence, I just wanted to say that there is a dispute regarding what Mr. Lyons knew at the time he possessed his firearm. The only way to read the motions and the pleadings in the case are to make that assertion that he did not know at the relevant time. And that is what requires a hearing under the low bar. The government points to, you know, its strongest piece of evidence in the record is the plea colloquy with the court admonishing Mr. Lyons, but what Mr. Lyons was told does not beyond dispute to prove what he knew at the relevant time or even what he knew then, given especially the facts in this particular case where the first thing he was told at that hearing was that the government was recommending a sentence of probation. And the last thing he told was that he was getting a sentence of probation. And so the maximum punishment, the sort of legalese formality in the middle was really irrelevant to the consequence that he was facing. And I think that that is enough at least to raise a dispute that he would be able to get a hearing to show what his knowledge was at the time. You know how sometimes in a suppression hearing to come forward to get a hearing, you sometimes have to come forward with some record evidence, not just assertions in a brief. Should we require that in a 2255 context? Because here there is no quote record evidence, representations about what we suspect might happen according to the petitioner. Your Honor, that is not a requirement under 2255. There simply have to be allegations in the motion. There is a separate rule in the rules governing habeas, rule I believe 7A, that allows the court to direct the party to submit affidavits, but the court didn't do so here. So certainly that's something that's available, but it's not a requirement. And where we have these allegations in the motion, which the government recognized in its response that we were alleging his lack of knowledge, that is enough to get an evidentiary hearing. Do we have any questions? We ask that the court reverse review. Okay, thank you very much, counsel. On behalf of my colleagues, we thank both of you for your excellent and helpful arguments. The court will take the matter under advisement.